UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STACIE C., | ) | Case No. 2:21-cv-05335-SP |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| KILOLO KIJAKAZI, Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

# I.
# **INTRODUCTION**

On June 30, 2021, plaintiff Stacie C. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of continuing supplemental security income ("SSI"). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered evidence of plaintiff's borderline intellectual functioning in determining her residual functional capacity ("RFC"),

and (2) whether the ALJ erroneously relied on testimony of the vocational expert ("VE") in determining plaintiff's ability to perform jobs in the national economy. Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 6-10; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-5.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly determined plaintiff's RFC and properly relied on the VE's testimony. The court therefore affirms the decision of the Commissioner denying continuing benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 27, 2010, plaintiff filed an application for SSI, alleging an onset date of April 1, 2009, and received a favorable decision. AR at 233, 403. The most recent favorable medical decision finding plaintiff was disabled ("comparison point decision" or "CPD") is dated March 10, 2010, at which point plaintiff was 35 years old and had the medically determinable impairments of chronic obstructive pulmonary disease ("COPD") and asthma. AR at 26, 234.

The Social Security Administration determined plaintiff was no longer disabled as of December 1, 2017, and upon reconsideration. AR at 251, 297. Plaintiff, unrepresented by counsel, appeared and testified at a hearing before the ALJ on May 4, 2020. AR at 211-27, 230-32. The ALJ also heard testimony from Kathleen Spencer, a vocational expert. AR at 227-29. The ALJ denied plaintiff's claim for continuing benefits on September 30, 2020. AR at 24-38.

Applying the seven-step sequential evaluation process to determine if plaintiff continued to be disabled, the ALJ found, at step one, that since December 1, 2017, plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the impairments set forth in 20 C.F.R. Part 404,

Subpart P, Appendix 1. AR at 26.

At step two, the ALJ found that medical improvement had occurred by December 1, 2017. AR at 28.

At step three, the ALJ found the medical improvement was related to plaintiff's ability to work, because by December 1, 2017, plaintiff's impairments no longer met or medically equaled the listings they met at the time of the CPD. AR at 29. Because of the ALJ's step three finding, no exceptions to medical improvement apply (20 C.F.R. § 416.994(b)(5)(iv)), and the ALJ continued to step five of the analysis, skipping step four. *Id.*

At step five, the ALJ determined that plaintiff suffered from the following severe impairments: "COPD, asthma, and borderline intellectual functioning. *Id.*

At step six, the ALJ assessed plaintiff's RFC,[1] and determined she had the ability to perform light work as defined in 20 CFR § 416.967(b), and was capable of:

> occasionally lifting/carrying twenty pounds; frequently lifting/carrying 10 pounds; standing or walking six hours of an eight hour workday; and sitting six hours of an eight hour workday. The claimant cannot climb ladders/ropes/scaffolds. She is capable of occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling. The claimant is limited to frequent reaching in all directions. She is limited to no more than occasional exposure to temperature extremes, humidity, and wetness. The claimant should have no more than occasional exposure to fumes, dusts, gases, odors, and poorly ventilated areas. The claimant cannot work around

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 nn.5-7 (9th Cir. 1989) (citations omitted).

unprotected heights or dangerous machinery. The claimant is limited to simple, routine tasks in a static work environment.

AR at 29-30. Based on this RFC, the ALJ determined plaintiff was unable to perform her past relevant work as a day worker. AR at 36.

At the final step, the ALJ found that since December 1, 2017, there were jobs that exist in significant numbers in the national economy that plaintiff had the ability to perform, including retail marker, cafeteria attendant, and routing clerk. AR at 37. The ALJ accordingly concluded plaintiff's disability ended on December 1, 2017, and she had not become disabled again. AR at 38.

Plaintiff filed a timely request for review of the ALJ's decision, which the Appeals Council denied. AR at 7-9. Accordingly, the ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the SSA must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035 (citation omitted). Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted); *Mayes*, 276 F.3d at 459. To determine whether

substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (cleaned up). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ." *Id.* (cleaned up).

## IV.

## DISCUSSION

**A.   The ALJ Did Not Err in Assessing the Evidence of Plaintiff's Borderline Intellectual Functioning in Determining the RFC**

Plaintiff argues the ALJ failed to sufficiently consider evidence of her borderline intellectual functioning in determining her RFC. P. Mem. at 6-7. Specifically, plaintiff argues the ALJ failed to consider medical evidence suggesting plaintiff's mental impairment would cause her moderate to severe limitations in performing certain functions, especially carrying out detailed tasks. *Id.* Plaintiff argues that as a result, the ALJ failed to sufficiently account for her mental limitations in the RFC, which in turn led to the conclusion that she is able to do jobs that are in fact beyond her abilities. P. Mem. at 7.

**1.   The ALJ's RFC Findings Regarding Plaintiff's Borderline Intellectual Functioning**

RFC is what one "can still do despite [their] limitations." 20 C.F.R. § 416.945(a)(1). The Commissioner reaches an RFC determination by reviewing and considering all of the relevant evidence. *Id.* In order for the ALJ to reject the contradicted opinion of an examining physician, they must provide specific and legitimate reasons supported by substantial evidence. *Lester v. Chater*, 81 F.3d

821, 830 (9th Cir. 1996).

Here, the ALJ found that plaintiff's history of borderline intellectual functioning imposed moderate limitations on her ability to understand, remember, or apply information, as well as her concentration, persistence, and maintenance of pace. AR at 36. To account for these limitations, the ALJ limited her RFC to "simple, routine tasks in a static work environment." *Id.* In making this finding, the ALJ analyzed plaintiff's medical records and symptom testimony, first assessing the severity of her mental impairments across the four functional areas set out in the disability regulations for evaluating mental disorders, which are known as the "paragraph B" criteria. AR at 27.

The first area of function in which the ALJ must rate the plaintiff's degree of functional limitation is understanding, remembering, or applying information. 20 C.F.R. § 416.920a(c)(3). In October 2007, plaintiff's scores on the Wechsler Adult Intelligence Scale fell into the borderline range. AR at 519. She scored 76 on verbal intelligence quotient, 84 in performance intellectual quotient, and 77 in full scale IQ. *Id.* One year later on October 6, 2008, a report by Dr. Ahmad Riahinejad showed her scores remained consistent with prior testing, "in the borderline range of intellectual functioning." AR at 27, 539-43. Her school records from May 2009 show she met the criteria for the Disabled Student Services and received accommodation including priority registration, course adjustment, testing accommodation, and a note taker. AR at 27, 550. Despite these challenges, plaintiff was able to maintain her household and care for her children. AR at 27 (citing AR at 454-57). On balance, the ALJ found plaintiff had moderate limitation in this area, and decreased the RFC accordingly. AR at 27.

The second functional area is interaction with others. 20 C.F.R. § 416.920a(c)(3). Plaintiff did not testify to difficulty getting along with others, and the ALJ found no limitation in this area. AR at 27.

      The third area of function in which the ALJ rated plaintiff's degree of limitation is concentration, persistence, or pace. 20 C.F.R. § 416.920a(c)(3). The ALJ found that based on plaintiff's history of borderline intellectual functioning, she had moderate limitation in this area, and decreased the RFC accordingly. AR at 27.

      The final functional area is adapting or managing oneself. 20 C.F.R. § 416.920a(c)(3). After noting there was no evidence the plaintiff had trouble behaving in an emotionally stable manner or relating predictably in social situations, the ALJ found mild limitation in the fourth area. AR at 27-28.

      The ALJ also discussed evidence of plaintiff's borderline intellectual functioning in his determination of the RFC, again citing the records from October 2007, October 2008, and May 2009. AR at 34 (citing AR at 519, 534-43, 550). The ALJ also reviewed plaintiff's March 4, 2018 evaluation by Dr. Valene Gresham, who found her concentration, persistence, and pace were intact and within normal limits. AR at 35, 907. She was able to remember three out of three objects after one minute and five minutes. AR at 35, 908. She was able to remember detailed autobiographical and historical information. *Id.* She was able to calculate that seven quarters was equal to $1.75. *Id.* Dr. Gresham diagnosed borderline intellectual functioning, as well as ADHD and generalized anxiety disorder. AR at 35, 909. Dr. Gresham found plaintiff's ability to perform detailed and complex tasks was mildly impaired. AR at 35, 909.

      The ALJ also cited an evaluation from January 19, 2018 by Dara Goosby, Psy.D., who opined plaintiff was moderately limited in her ability to concentrate and persist, including her ability to carry out detailed instructions. AR at 35-36 (citing AR at 245). Records from an evaluation with Dr. Morgan on March 29, 2018 indicate plaintiff's mental impairment imposed only mild limitations across the four areas of mental functioning. AR at 36, 888. In his discussion of plaintiff's

mental impairments, the ALJ also discussed plaintiff's history of anxiety, depression, and PTSD, which are not at issue here. AR at 34-36.

In light of the evidence described above, the ALJ concluded that plaintiff's borderline intellectual functioning imposed moderate limitations on her ability to understand, remember, or apply information, as well as her concentration, persistence, and maintenance of pace. AR at 36. To account for these limitations, the ALJ limited her RFC to "simple, routine tasks in a static work environment." *Id.* The ALJ noted this limitation was consistent with Dr. Goosby's opinion and plaintiff's activities of daily living. *Id.* (citing AR at 245, 454-57).

### 2. **The RFC Was Supported by Substantial Evidence**

Plaintiff argues the ALJ's RFC determination failed to account for two pieces of evidence in the record: (1) a statement from Dr. Riahinejad in the October 6, 2008 record that plaintiff "could have moderate to severe difficulty understanding, remembering and carrying out complex and detailed instructions," and (2) a note in Dr. Gresham's March 4, 2018 report that states that plaintiff was "unable to complete serial 7s or serial 5s."[2] AR at 543, 908.

---

[2] Plaintiff also suggests, primarily in her Reply, that the ALJ was required to find a medical improvement in plaintiff's intellectual functioning in order to terminate her benefits. Reply at 2-3. It is true that, once there has been a finding of disability, the Commissioner must provide substantial evidence of medical improvement, new evidence or techniques that make an impairment less disabling, or evidence that a prior disability determination was erroneous, before determining whether the claimant is still disabled. 42 U.S.C. §§ 423(f), 1382c(a)(4); *see Lambert v. Saul*, 980 F.3d 1266, 1271. But there is no requirement that the ALJ make such a finding with respect to every impairment. Here, the ALJ satisfied this requirement by finding medical improvement with respect to plaintiff's asthma and COPD. AR at 28-29. Having made such a finding, the ALJ proceeded through the remaining steps, including identifying all of plaintiff's current severe impairments (which include borderline intellectual functioning) and assessing plaintiff's current RFC in light of all of her impairments. AR at 29-36.

a. **<u>Dr. Riahinejad's October 6, 2008 Evaluation</u>**

Plaintiff argues that in order for the ALJ to reject Dr. Riahinejad's opinion, "the ALJ must state specific and legitimate reasons" for doing so. Reply at 3 (citing *Lester*, 81 F.3d at 830-31). But the ALJ did not explicitly or implicitly reject any medical opinion related to plaintiff's borderline intellectual functioning, including Dr. Riahinejad's 2008 report. To the contrary, the ALJ noted that Dr. Riahinejad's report showed plaintiff's scores on the Wechsler Adult Intelligence Scale were "consistent with prior testing and remained in the borderline range of intellectual functioning," and relied on that finding in concluding plaintiff's mental impairment necessitated an RFC limitation. AR at 27, 34.

Plaintiff argues it was error for the ALJ to omit reference to the particular line in that record that plaintiff "could have moderate to severe difficulty understanding, remembering and carrying out complex and detailed instructions." P. Mem. at 7 (citing AR at 543). But the ALJ is not required to discuss every piece of evidence in the record as long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review. *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (ALJs "are not required to articulate how [they] considered each medical opinion or prior administrative medical finding from one medical source individually"). Here, the ALJ did consider the medical record in question and concluded it supported a nonexertional RFC limitation. AR at 27, 34.

Considering "both the evidence that supports and the evidence that detracts from the ALJ's conclusion," there was substantial evidence to support the ALJ's conclusion regarding the nonexertional limitation imposed. *Mayes*, 276 F.3d at 459. The ALJ restricted plaintiff to "simple, routine tasks in a static work environment," stating the limitation was consistent with Dr. Goosby's opinion that plaintiff is moderately limited in following detailed instructions. AR at 36. The ALJ also cited opinions from Dr. Morgan and Dr. Gresham that plaintiff's mental

9

impairments only mildly limited her ability to perform basic work activities. AR at 35-36 (citing AR at 888, 909). It is not clear to the court that Dr. Riahinejad's opinion that plaintiff "*could* have moderate to severe difficulty understanding, remembering and carrying out complex and detailed instructions" necessarily conflicts with the other opinions. *See* AR at 543(emphasis added). In any case, to the extent there is any inconsistency, the court finds the ALJ's decision on the RFC's nonexertional limitation was supported by substantial evidence, and will not second guess it. *See Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (holding that where the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ").

### b. Dr. Gresham's March 4, 2018 Evaluation

Plaintiff seems to suggest that the ALJ should have relied on a specific examination finding from the March 4, 2018 record of plaintiff's evaluation by Dr. Gresham to come to a different medical conclusion than Dr. Gresham did herself. P. Mem. at 6. Specifically, plaintiff notes that in the ALJ's discussion of Dr. Gresham's evaluation, he did not discuss the specific finding that plaintiff was "unable to complete serial 7s or serial 5s." P. Mem. at 6 (citing AR at 908). Plaintiff notes that according to the Social Security Administration's Program Operation Manual System (POMS), the ability to subtract serial numbers is an evidentiary tool for assessing concentration, persistence, or pace. P. Mem. at 6. Plaintiff's unstated conclusion appears to be that her inability to subtract serial sevens and fives necessarily contradicts Dr. Gresham's conclusion that plaintiff's impairments in the functions needed to perform work were at most mild, and that the ALJ erred by crediting Dr. Gresham's conclusion in light of this supposed contradiction. AR at 909.

This argument fails for multiple reasons. First, as defendant notes, the

POMS is not binding authority. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("The POMS does not have the force of law, but it is persuasive authority."). Second, even if the ALJ were bound by the POMS, it states only that "concentration is assessed by tasks *such as* having you subtract serial sevens or serial threes from 100." POMS DI 34132.009(C)(3); POMS DI 34132.011(C)(3) (emphasis added). For that reason, an inability to subtract serial numbers would not be dispositive of plaintiff's concentration abilities, let alone dispositive of an appropriate RFC based on those abilities.

Overall, the ALJ properly considered the record and reached an RFC determination based on substantial evidence.

**B.     The ALJ Did Not Err in Determining Plaintiff Was Able to Perform Jobs in the National Economy**

Plaintiff also argues the ALJ erred by relying on the VE's testimony finding plaintiff could perform jobs with Dictionary of Occupational Titles ("DOT") descriptions in apparent conflict with her RFC. P. Mem. at 8-10. Plaintiff points out the jobs identified by the VE all require reasoning level 2, which includes the ability to deal with problems involving a few concrete variables. P. Mem. at 8 (citing DOT Appendix C). She further notes that the ALJ limited plaintiff to simple, routine tasks in a static work environment. *Id.* Plaintiff argues the ability to deal with problems involving a few concrete variables, as level 2 requires, conflicts with the restriction to a static work environment, and the ALJ erred by failing to resolve this apparent conflict. *Id.*

**1.     Legal Standard**

At the final step, the burden shifts to the Commissioner to show the claimant retains the ability to perform gainful activity other than their past relevant work. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled, the Commissioner must provide evidence

demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given their age, education, work experience, and RFC. 20 C.F.R. § 404.1512(f).

ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. § 404.1566(d)(1) (DOT is source of reliable job information). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). Each DOT job description includes general educational development ("GED") scales for reasoning, language, and mathematics, which are "aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Appendix C, Section III. To determine a job's simplicity and the reasoning level required, one should look to the GED reasoning level ratings for the job listed in the DOT. *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005). A job's reasoning level "gauges the minimal ability a worker needs to complete the job's tasks themselves." *Id.*

An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi*, 486 F.3d at 1152-53 (citing SSR 00-4p). In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." *Id.* at 1153 (quoting *Johnson*, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

The ALJ's obligations do not end with the initial inquiry. Even where a VE wrongly testifies that there is no conflict, where "evidence from a VE 'appears to

conflict with the DOT,' SSR 00-4p requires further inquiry: an ALJ must obtain 'a reasonable explanation for the apparent conflict.'" *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (quoting SSR 00-4p). Where the ALJ fails to obtain an explanation for and resolve an apparent conflict – even where the VE did not identify the conflict – the ALJ errs. *See Hernandez v. Astrue*, 2011 WL 223595, at *2-5 (C.D. Cal. Jan. 21, 2011) (where VE incorrectly testified there was no conflict between her testimony and DOT, ALJ erred in relying on VE's testimony and failing to acknowledge or reconcile the apparent conflict); *Mkhitaryan v. Astrue*, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010) ("Because the ALJ incorrectly adopted the VE's conclusion that there was no apparent conflict [and] the ALJ provided no explanation for the deviation," the ALJ "therefore committed legal error warranting remand.").

        2.      **There Was No Apparent Conflict With the DOT**

Here, when asked about a hypothetical person with the same RFC as plaintiff, including being "limited to simple routine tasks in a static work environment," the VE testified such person could perform light work existing in the national economy including retail marker (DOT 209.587-034), cafeteria attendant (DOT 311.677-010), and routing clerk (DOT 222.587-038). AR at 228. The VE further testified that such person could perform sedentary work including escort vehicle driver (DOT 919.663-022), addresser (DOT 209.587-010), and tube operator (DOT 239.687-014). AR at 228-29. According to the DOT, the occupations identified by the VE require reasoning level 2, which requires the ability to deal with problems involving a few concrete variables. DOT Appendix C.

When asked whether her testimony was consistent with the DOT, the VE testified it was consistent. AR at 229. Nonetheless, if there were an apparent conflict between the VE's testimony and the DOT, the ALJ would have been

1  obligated to obtain "a reasonable explanation for the apparent conflict." *Overman*,
2  546 F.3d at 463 (quoting SSR 00-4p). Therefore, the issue here is whether an
3  apparent conflict exists in the VE's testimony that a person restricted to a static
4  work environment could perform jobs requiring level 2 reasoning, that is, jobs
5  requiring the ability to deal with problems involving a few concrete variables.

6        Plaintiff argues there is an apparent conflict between "variables and static,"
7  primarily appealing to plain language. P. Mem. at 8; P. Reply at 4. She argues that
8  the least restrictive dictionary definition of the word static, "little change,"
9  conflicts with having "a few concrete variables" in the workplace. P. Reply at 4.
10 But contrary to plaintiff's argument, the court does not find any apparent conflict
11 between the plain meaning of these terms here. A workplace marked by little
12 change does not necessarily mean one without problems that may have a few
13 variables.

14       Plaintiff also urges the court to find that reasoning level 2 entails performing
15 work with "few frequent changes," citing *Kelsey v. Berryhill*, 2017 WL 3218072,
16 at *4 (D. Or. July 27, 2017). It is unclear how *Kelsey* is of any assistance to the
17 analysis here. *Kelsey* did not hold that any job requiring reasoning level 2
18 necessarily entails few frequent changes, but simply found that one doctor's
19 recommendation a plaintiff work in a job with few frequent changes was consistent
20 with reasoning level 2. *Id.* It has no bearing on whether a job with a few changes
21 is consistent with a static work environment.

22       In short, on its face a static work environment does not preclude one in
23 which employees deal with problems that may have a few variables, and plaintiff
24 cites nothing holding otherwise. As such, there was no apparent conflict in the
25 VE's testimony that someone restricted to a static work environment could perform
26 jobs requiring level 2 reasoning, and the ALJ therefore did not err by declining to
27 seek further explanation.

28

V.

**<u>CONCLUSION</u>**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: March 30, 2023

_____
SHERI PYM
United States Magistrate Judge